# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUMENTHAL DISTRIBUTING, INC. dba OFFICE STAR, a California Corporation,<br><br>                    Plaintiff,<br><br>           v.<br><br>GAMESIS, INC., a suspended California corporation, and TONY S. CHENG, an individual,<br><br>                    Defendants. | Case No. 5:22-cv-01307-SPG-JC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [ECF NO. 21]** |

    Before the Court is Plaintiff Blumenthal Distributing, Inc. d/b/a Office Star's ("Plaintiff") motion for default judgment against Defendants Gamesis, Inc. and Tony S. Cheng (together "Defendants"). (ECF No. 21). Defendants did not oppose the motion and have not otherwise appeared in this action. The Court has read and considered the matters raised with respect to the motion and concluded that this matter is suitable for decision without oral argument. See Fed. R. Civ. P. 78(b); Local Rule 7-15. Having considered Plaintiff's submission, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion.

## I. BACKGROUND

### A. Factual Background

The following facts are alleged in the Plaintiff's Complaint and are taken as true due to the entry of default against Defendants:

Plaintiff is an importer and distributor of office furniture, including office chairs. (ECF No. 1 ("Compl.") ¶ 10). Plaintiff protects its brands, including the "Office Star" brand, in part through trademark registration of key marks. (*Id.* ¶¶ 11–13). For instance, Plaintiff has registered its "Office Star" name and logo. (*Id.* ¶¶ 13–14). As a part of its distribution network, Plaintiff began a relationship with Defendants in mid-2013 whereby Defendants would sell Plaintiff's office chairs on its website and then have Plaintiff deliver them. (*Id.* ¶ 15). As a part of this relationship, Plaintiff informally gave Defendants permission to use the name "Office Star" in its domain name officestarstore.com. (*Id.* ¶ 16). However, Plaintiff never gave Defendants permission to use the trademarked Office Star logo, nor did it give Defendants permission to describe Gamesis as an "Authorized Office Star Dealer." (*Id.* ¶¶ 17–18).

In 2017, Plaintiff discovered that Defendants were using the Office Star logo, a registered trademark, on the website at officestarstore.com and were describing Gamesis as an "Authorized Dealer." (*Id.* ¶ 20). Plaintiff then wrote a letter to Defendants directing them to remove "all copyrighted images and product descriptions from your site within ten days of this letter." (*Id.* ¶ 21). The letter also informed Defendants that the informal sales relationship was over and gave Defendants a short period to wind down their sale of Plaintiff's products. (*Id.* ¶¶ 21–22). Plaintiff processed the final legitimate order from Defendants in January 2018. (*Id.* ¶ 22).

However, around March 2022, an individual who had ordered an "Office Star" chair on Defendants' website, officestarstore.com, contacted Plaintiff to inquire about the status of the chair she had ordered. (*Id.* ¶ 23). She stated that Defendants informed her there were shipping delays with her order but that it would be fulfilled. (*Id.*). Plaintiff proceeded to investigate Defendants' website and learned that Defendants continued to hold Gamesis

out as an "Authorized Dealer" of Plaintiff's chairs. (*Id.* ¶ 24). Plaintiff also discovered that Defendants were using Plaintiff's Office Star mark and logo to sell office chairs. (*Id.*). Further investigation revealed that multiple customers had been deceived into placing orders for Office Star products from Defendants' website and had never received them despite paying Defendants for the goods. (*Id.* ¶ 25). Plaintiff alleges this practice by Defendants confused consumers and damaged Plaintiff's reputation. (*Id.* ¶¶ 27–28). Plaintiff specifically states that Defendants' representations that Plaintiff was experiencing issues with quality control or shipping further damaged Plaintiff's reputation in the eyes of consumers. (*Id.*). Plaintiff alleges that Defendants' continued use of Plaintiff's registered marks was willful and was intended "to free ride on the goodwill" associated with Plaintiff's marks. (*Id.* ¶ 32).

### B. Procedural History

Plaintiff filed the Complaint in this action on July 25, 2022. (ECF No. 1). While Plaintiff initially struggled to adequately serve Defendants, on August 23, 2022, Defendant Gamesis filed an updated statement with the California Secretary of State listing Defendant Cheng as its agent and 324 S. Diamond Bar Blvd., # 197, Diamond Bar, CA 91765 as its address. (ECF No. 21-1 at 14, n.5). Plaintiff then served Defendants at the new address on August 24, 2022. (ECF Nos. 12, 13). On September 26, 2022, after Defendants failed to answer or otherwise respond to the Complaint, Plaintiff filed a request for entry of default. (ECF No. 15). The clerk entered default as to both Defendants on September 28, 2022. (ECF No. 18). On October 13, 2022, Plaintiff filed the instant motion for default judgment, which Defendants have not opposed. (ECF No. 21).

## II. LEGAL STANDARD

A court may order default judgment following the entry of default by the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(b). Fed. R. Civ. P. 55(b). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.

1987). To determine damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Before a court can enter a default judgment against a defendant, the plaintiff must comply with the procedural requirements set forth in Federal Rules 54(c) and 55, as well as those in Local Rule 55-1. Local Rule 55-1 requires the party moving for default judgment to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Federal Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). That a defendant has defaulted "does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, the court, in its discretion, considers several factors, colloquially known as the "*Eitel* factors." The *Eitel* factors ask courts to weigh: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III.     DISCUSSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court therefore examines jurisdiction and service of process in addition to the *Eitel* factors.

A. **Jurisdiction**

1. Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). However, district courts have subject-matter jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. Furthermore, where such "federal question" jurisdiction exists, courts may exercise supplemental jurisdiction over any state law claims that "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 157 (1997) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here, Plaintiff asserts claims for federal trademark infringement and counterfeiting, federal unfair competition, and violation of the federal anticybersquatting consumer protection act, in addition to several state law claims. (ECF No. 1). The Court has subject matter jurisdiction under section 1331 over each of Plaintiff's claims arising under federal law. Additionally, the Court may exercise supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same nucleus of operative fact. All the claims relate to Defendants' use of Plaintiff's marks and goods in falsifying online sales. *See* (ECF No. 1 ¶¶ 37–77). Therefore, the Court may properly exercise subject matter jurisdiction in this action.

2. Personal Jurisdiction

A court may exercise general personal jurisdiction over a corporation that is fairly regarded as "at home" in the forum state. *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). A corporation is considered to be "at home" in both its "place of incorporation and principal place of business." *Daimler AG v. Baumann*, 571 U.S. 117, 137 (2014). Likewise, a court has general jurisdiction over an individual defendant where a defendant is domiciled in the forum state or his activities there are "substantial" or "continuous and systematic." *Panavision Intern.. L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 –16 (1984).

Here, the Court has general personal jurisdiction over both Defendants. Plaintiff has presented public records indicating that Defendant Chen's most recent known residence is located in California. Plaintiff has also presented public records demonstrating that Gamesis is incorporated in the state of California, where, to date, the corporation is listed as suspended. Therefore, the Court finds it has personal jurisdiction over both Defendants.

### B. Service of Process

Before entering a default judgment, courts must assess whether the defendant was properly served with notice of the action. *See e.g.*, *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Federal Rule of Civil Procedure 4 provides that service may be effectuated "pursuant to the law of the state in which the district court is located." *See* Fed. R. Civ. P. 4(e)(1). Under California law, a summons and complaint may be served through "substitute service," which is defined as "leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. P. §415.20(a).

Here, Plaintiffs have filed proofs of service demonstrating service on both Defendants. (ECF Nos. 12, 13). The only known address for Defendant Gamesis is located at 324 S. Diamond Bar Blvd., # 197, Diamond Bar, CA 91765. The address is that of a store called PostNet, which monitors Gamesis's mailbox. (ECF No. 21-1 at 14–15). Furthermore, Defendant Gamesis recently updated its address to match the above PostNet box on a Statement of Information filed with the California Secretary of State on August 23, 2022. (ECF No. 21-1 at 14); *see also* (ECF No. 15-2). The Statement of Information also listed Cheng as Gamesis's agent, apparently reachable at the PostNet address. (ECF No. 15-2). After diligently attempting to personally serve Cheng, both in his individual capacity and as agent of Gamesis, at several previously listed addresses subsequently

determined to be outdated, Plaintiff attempted substitute service at the PostNet address on August 24, 2022. (ECF Nos. 12, 13). Plaintiff delivered the summons and complaint to Francisco Ramirez, a clerk for Post Net and the person apparently in charge of the address listed by Defendants. (*Id.*). Plaintiff then mailed a copy of the same documents to the address as well. (ECF Nos. 12, 13, 15). This satisfies the requirements of substitute service under California law. The fact that Gamesis is a suspended corporation does not affect the adequacy of service of process. Under California law, a plaintiff may effect service of process on a suspended corporation under the regular service of process statutes. *See Grell v. Laci Lea Beau Corp.*, 73 Cal.App.4th 1300, 1306 (1999) ("A suspended corporation may be sued, and service of process upon a suspended corporation is effected in the same manner as service upon a corporation that is not suspended").

## C. Additional Procedural Requirements

Plaintiff has similarly satisfied the additional procedural requirements under the local rules in this district. Default against Defendants was entered on September 28, 2022, for failure to Answer or otherwise appear in this action. (ECF No. 18). Plaintiff then moved for default judgment on October 13, 2022. (ECF No. 21). Plaintiff alleges that Defendants are neither infants nor incompetent persons, nor are they subject to the Servicemembers Civil Relief Act. (ECF No. 21-1 at 13). Therefore, Plaintiff has met Rule 55's additional procedural requirements for default judgment.

## D. *Eitel* Factors

Overall, an analysis of the *Eitel* factors weighs in favor of granting default judgment against Defendants.

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor asks the court to consider whether Plaintiff will be left without a remedy if default judgment is not entered. *Philip Morris USA v. Castworld Prods. Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff will be without other recourse for recovery."); *PepsiCo*, 238 F. Supp. 2d at 1177 ("If Plaintiffs' motion for default judgment is not granted,

Plaintiffs will likely be without other recourse for recovery."). Defendants have failed to appear or otherwise participate in this litigation. Therefore, Plaintiff will suffer prejudice if a default judgment is not entered because it will be left without a remedy. The first *Eitel* factor favors entry of default judgment.

2. Substantive Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors assess the merits of the claims of the moving party and the sufficiency of its pleadings. These two factors "require that a [movant] state a claim on which it may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal citation omitted). Courts regularly analyze these factors together. *See id.* Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for the purposes of a default judgment. *See id.* In analyzing these factors, a court accepts as true all well-pleaded allegations regarding liability. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Here, Plaintiff brings claims for (1) federal trademark infringement and counterfeiting; (2) false designation of origin; (3) violation of the federal anti-cybersquatting consumer protection act; (4) violation of California business and professions code § 17200; (5) false advertising; (6) intentional interference with existing and prospective economic advantage; and (7) California common law unfair competition. (ECF No. 1). The Court examines each in turn.

a. Plaintiff's Trademark Infringement and Counterfeiting Claims

To prevail on a trademark counterfeiting claim under 15 U.S.C. § 1114(1)(b), Plaintiff "must prove that Defendant reproduced, counterfeited, copied or colorably imitated a registered mark and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive." *PepsiCo*, 238 F. Supp. 2d at 1175. To prevail on its trademark infringement claim, on the other hand, Plaintiff must prove that, without Plaintiff's consent, Defendant "use[d] in commerce any reproduction,

counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a).

Here, Plaintiff's Complaint sufficiently alleges the elements of these causes of action. It sets forth the details of Plaintiff's registered marks and explains the ways in which Defendants continued use of the marks to elicit sales on their website was likely to cause confusion. (Compl. ¶¶ 13–14). Plaintiff alleges that Defendants used the marks to imply that they would sell customers office chairs designed and manufactured by Plaintiff. (*Id.* ¶¶ 28–32). Plaintiff alleges it has gained acclaim for its design of its office chairs. (*Id.* ¶ 10). Plaintiff admits that before 2017, Defendants' use of some of Plaintiff's marks was not infringement because of the informal agreement between the two parties. (*Id.* ¶ 15). However, Plaintiff's allegations establish that Plaintiff subsequently ended its relationship with Defendants after learning that Defendants had exceeded the scope of their agreement with Plaintiff. (*Id.* ¶¶ 20–22). Thus, when Defendants continued to use Plaintiff's marks and hold their website out as an "Authorized Dealer" of Plaintiff's office chairs after their relationship with Plaintiff had ended, Defendants were doing so without authorization from Plaintiff. (*Id.* ¶¶ 23–26). Furthermore, because the chairs for sale on Defendants' website continued to be described as "Office Star" products after the end of the parties' relationship, this circumstance had a high likelihood of confusing and deceiving consumers. This was particularly damaging to Plaintiff's reputation, according to the Complaint, because Defendant continued to represent that the chairs were Plaintiff's products when customers inquired about outstanding orders. (*Id.* ¶ 27). Rather than taking responsibility for shipping delays or explaining that the products were not affiliated with Plaintiff, Plaintiff alleges Defendants told consumers that Plaintiff was experiencing quality control issues and/or shipping delays that were impacting their orders. (*Id.*).

Therefore, Plaintiff has sufficiently alleged its trademark infringement and counterfeiting claims.

### b. Plaintiff's False Designation of Origin Claim

To prevail on a false designation of origin claim, Plaintiff must "prove that Defendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant[s] with Plaintiff[], or as to the origin, sponsorship, or approval of his goods by Plaintiffs." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also* 15 U.S.C. § 1125(a). Here, as explained above, Plaintiff has alleged that Defendants' use of the Office Star name improperly deceived consumers regarding an ongoing affiliation with Plaintiff. Therefore, Plaintiff has sufficiently alleged its false designation of origin claim.

### c. Plaintiff's Unfair Competition Claims

Plaintiff brings three separate unfair competition claims in its Complaint: (1) federal unfair competition; (2) violation of California Business & Professions Code § 17200; and (3) California common law unfair competition. To state a claim for unfair competition under the Lanham Act, Plaintiff must make the same showing as required in the trademark infringement context that "the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal citation omitted). To prevail on its claim for unfair competition under the California Business & Professions Code, Plaintiff must prove that Defendants engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To prevail on its common law unfair competition claim, Plaintiff must prove that Defendants tried to pass off false goods as those of Plaintiff. *See, e.g.*, *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1263 (1992).

Here, as established above, Plaintiff's Complaint adequately alleges that Defendants' use of the Office Star mark on its website was likely to deceive or confuse consumers. The Complaint alleges that the logo used on Defendants' website was essentially identical to Plaintiff's registered mark. (Compl. ¶ 14–17). Furthermore, the mark on Defendant's website was used in a context, the sale of office chairs, that was likely to confuse customers as to the source of the chairs. Indeed, Defendants furthered this confusion by holding out the chairs expressly as Plaintiff's products, even as issues arose with fulfilling orders paid for by customers. In essence, Plaintiff's complaint alleges that Defendants tried to "pass off false goods as those of Plaintiff." Therefore, Plaintiff has adequately alleged all its unfair competition claims.

        d.    <u>Violation of Federal Anticybersquatting Consumer Protection Act</u>

The Anticybersquatting Consumer Protection Act ("ACPA") provides a remedy when "a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (internal citation omitted). The elements of a claim under the ACPA are (1) the registration, use, or trafficking in a domain name, (2) that is identical or confusingly similar to a distinctive or famous trademark, (3) with a bad faith intent to profit from the mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also Bosley*, 403 F.3d at 680.

Here, Plaintiff's Complaint alleges that it owns the trademark and Plaintiff has provided the relevant registration as evidence of ownership of the "Office Star" mark. (ECF Nos. 1, 1-1). Plaintiff also alleges that Defendants use the domain Officestarstore.com, despite Plaintiff's revocation of their permission to use the Office Star mark. (Compl. 21–22). While Plaintiff admits to having initially given Defendants permission to use the Office Star name in their domain name, Plaintiff also alleges that it revoked that permission after discovering Defendants were exceeding the scope of their

agreed relationship. (*Id.*). Therefore, Plaintiff's Complaint states that Defendants continued to use the Officestarstore.com domain even after Plaintiff made clear that the use of the domain for sale of Plaintiff's products was not permissible. (*Id.*). Plaintiff alleges the domain name at issue and Plaintiff's mark over the "Office Star" name are confusingly similar. (*Id.* ¶¶ 51–52). Plaintiff also alleges the mark is distinctive in the context of office supplies. (*Id.* ¶ 10). Additionally, Plaintiff alleges a bad faith intent to profit from the mark based on Defendants' use of the mark to elicit sales it knew it could not fulfill. (*Id.* ¶ 53). Therefore, Plaintiff has adequately demonstrated likelihood of success on its claim under the ACPA.

     e. <u>False Advertising under Cal. Bus. & Prof. Code § 17500</u>

  To state a claim for false advertising under California Business and Professions Code § 17500, Plaintiff must show Defendants "made a statement, in connection with the sale of personal property, which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *PepsiCo*, 238 F. Supp. 3d at 1176 (internal citations omitted); *see also* Cal. Bus. & Prof. Code § 17500.

  Here, Plaintiff alleges that Defendants "knowingly made false and misleading representations that are misleading customers and potential customers as to the source of their goods or services and as to their affiliation with [Plaintiff]." (Compl. ¶ 63). Combined with the additional factual allegations raised in the Complaint, analyzed above, the allegations are sufficient to state a claim under Cal. Bus. & Prof. Code § 17500.

     f. <u>Intentional Interference with Existing and Prospective Business Relations</u>

  To state a claim for the tort of intentional interference with business relations Plaintiff must assert "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the

plaintiff proximately caused by the defendant's acts." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152, n.6 (2004). The prospective economic relationship must be reasonably probable and not speculative. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004). Plaintiff must allege that Defendants "engaged in an independently wrongful act in disrupting the relationship," in addition to the interference itself. *Reeves*, 33 Cal.4th at 1152 (describing an act as "independently wrongful . . . if it is proscribed by some constitutional statutory, regulatory, common law, or other determinable legal standard") (internal quotation omitted).

Here, Plaintiff alleges that it has existing and prospective relationships with retailors, customers, and vendors for the sale of its products. (Compl. ¶ 67). Plaintiff alleges it has developed these relationships for over 30 years and further states that Defendants were aware of these relations throughout the relevant time period. (*Id.* ¶¶ 67–68). Despite this alleged knowledge, according to the Complaint, Defendants intentionally operated the webstore at officestarstore.com and held themselves out as authorized dealers of Plaintiff's goods to interfere with Plaintiff's relationships with third-party retailers and consumers. (*Id.* ¶¶ 69–70). As a part of this interference, Plaintiff alleges Defendants used Plaintiff's marks without authorization. (*Id.*). And, because of this interference, Plaintiff alleges these relationships with third-party consumers, vendors, and retailers were disrupted, causing Plaintiff to suffer economic harm. (*Id.* ¶¶ 71–72). Therefore, Plaintiff has sufficiently stated its claim for intentional interference with business relations.

In sum, based on the analysis above, Plaintiff has met the second and third *Eitel* factors.

### 3. Sum of Money at Stake

In applying the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. A default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang*

*Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  However, default judgment may be appropriate "where the amount sought is tailored to the specific misconduct of the defendant." *Patagonia, Inc. v. McHugh*, No. LA CV19-07666 JAK (AFMx), 2020 WL 4258818, at *5 (C.D. Cal. Apr. 21, 2020).

Here, Plaintiff seeks a permanent injunction, transfer of an infringing domain name, and attorneys' fees and costs.  Plaintiff does not seek monetary damages.  Therefore, this factor weighs in favor of default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth factor considers the likelihood of dispute between the parties concerning material facts in the case.  Due to the entry of default against Defendants, the Court may assume the truth of the well-pleaded facts in the Complaint, meaning there is a very low likelihood that any genuine dispute of material fact exists. *See, e.g.*, *Elektra Entm't. Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default . . . there is no likelihood that any genuine issue of material fact exists").

Defendants have failed to rebut the presumption that the well-pleaded facts in the Complaint are true because they have failed to oppose the application for default or default judgment.  Therefore, this factor favors granting default judgment.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's inaction is due to excusable neglect.  Excusable neglect is unlikely when a defendant is properly served, and therefore, aware of a plaintiff's pending action in court, and yet has failed to appear or present a defense. *See, e.g.*, *Patagonia, Inc.*, 2020 WL 4258818, at *6.

Here, Defendants were properly served by substitute service and yet have failed to appear.  Furthermore, while it is true that Defendant Gamesis is a suspended corporation generally unable to initiate or defend a lawsuit, California law liberally allows a corporation to reinstate its status before final judgment and defend an action. *See e.g.*, *United States v. 2.61 Acres of Land*, 791 F.2d 666, 668 (9th Cir. 1985).  Therefore,

Defendant Gamesis's suspended status alone does not create excusable neglect. Accordingly, this factor weighs in favor of a default judgment against Defendants.

6. Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, "where a defendant fails to appear and respond," default judgment is appropriate. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. Jan. 23, 2012). Here, Defendants' failure to appear or defend against this action renders a decision on the merits impracticable. Therefore, this factor weighs in favor of default judgment.

In sum, the Court finds the *Eitel* factors weigh in favor of entry of a default judgment against Defendants, who have not appeared in the Action or opposed the instant motion.

**E. Relief Sought by Plaintiff**

Plaintiff seeks a permanent injunction against Defendants' use of their trademarks, the transfer of the officestarstore.com domain name to Plaintiff, and attorneys' fees. Plaintiff does not seek damages.

1. Permanent Injunctive Relief

Under the Lanham Act courts possess the "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a trademark holder's rights. 15 U.S.C. § 1116(a). "A plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims." *PepsiCo*, 238 F. Supp. 2d at 1177. "Injunctive relief is appropriate if (1) the plaintiff has suffered irreparable injury, (2) legal remedies are inadequate to compensate that injury, (3) a balance of the hardships between the plaintiff and defendant justifies equitable relief, and (4) the public interest would be served by the permanent injunction." *Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.*, 2022 WL 3575771 at *8 (C.D. Cal. Jun. 7, 2022) (citing *Daimler AG v. A-Z Wheels* LLC, 498 F. Supp. 3d 1282, 1292 (S.D. Cal. 2020).

To establish irreparable injury in the trademark context, a plaintiff must demonstrate that "the infringement manifests as the loss of control over a business' reputation, a loss of trade, and a loss of goodwill." *Id.* (internal citations omitted).  Here, Plaintiff has satisfied this standard by alleging facts relating to its longstanding reputation for quality office furniture as well as Defendants' use of Plaintiff's mark to sell office chairs for which it received payment but then failed to deliver.  Plaintiff further alleges Defendants were using Plaintiff's mark to imply any of Defendants' failures to deliver were caused by Plaintiff.  These allegations demonstrate that customers would be prone to associating Defendants' subpar products and service with Plaintiff, thereby damaging Plaintiff's reputation.  Therefore, Plaintiff has demonstrated it has suffered irreparable injury.  It has also demonstrated it is likely to continue to suffer such injury based on its allegations that Defendants continue to use Plaintiff's mark on Defendants' subsidiary websites.  Because this injury consists of ongoing harms to Plaintiff's reputation, Plaintiff has likewise demonstrated that a remedy at law would be inadequate.  *See Sandlin*, 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement").

The balance of hardships also favors injunctive relief.  Plaintiff has alleged that it has been and will continue to be injured by Defendants' conduct.  Meanwhile a "defendant suffers no hardship in merely refraining from willful trademark infringement." *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV 13-05167 BRO (MANx), 2015 WL 4517846, at *24 (C.D. Cal. July 24, 2015) (internal citation omitted).

Finally, a permanent injunction here would serve the public interest.  "Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *Daimler AG*, 498 F. Supp. 3d at 1295.  Here, Plaintiff has alleged that Defendants' use of its marks is likely to cause consumer confusion.  Therefore, the public "interest in being free from deception" favors entry of an injunction. *See Anhing Corp.*, 2015 WL 4517846, at *24.

Overall, Plaintiff has met all four requirements for a permanent injunction and the Court GRANTS Plaintiff's request for permanent injunctive relief enjoining Defendants from using Plaintiff's marks.

### 2. Transfer of the Officestarstore.com Domain Name

Under the ACPA, available remedies include the "transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). While Plaintiff admits that Defendants appear to have removed content from Officestarstore.com since the filing of this lawsuit, that does not preclude Defendants from using it again in the future. Therefore, to keep Plaintiff from having to monitor the domain indefinitely, the Court orders the domain transferred to Plaintiff.

### 3. Attorneys' Fees

"When a party properly requests attorneys' fees in default actions, the court is obliged to calculate a reasonable fee in the usual manner," i.e., the lodestar method. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018). An award of reasonable attorneys' fees and costs is expressly provided for in "exceptional cases" of trademark infringement. *See* 15 U.S.C. § 1117(a). What qualifies as "exceptional" remains undefined in the statute, however, the Ninth Circuit has held that "attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002). Where default has been entered, allegations of willfulness are accepted as true. *See Rio Props.*, 284 F.3d at 1023. Therefore, courts may award "reasonable" attorneys' fees in trademark infringement cases ending in default judgment if a complaint properly alleged malicious, fraudulent, deliberate, or willful infringement. *See id.* Here, Plaintiff's Complaint alleges Defendants' infringing conduct was willful, therefore the Court will analyze Plaintiff's request for reasonable attorneys' fees. (Compl. ¶ 41).

In an application for default judgment, where attorneys' fees are sought under a statute, fees are generally calculated according to the schedule provided in Local Rule 55-

3. *See* C.D. Cal. L.R. 55-3. However, when a party properly requests attorneys' fees in excess of this schedule, "the court is obliged to calculate a reasonable fee in the usual manner" utilizing the lodestar method. *Vogel v. Harbor Plaza Ctr.,* LLC, 893 F.3d 1152, 1159 (9th Cir. 2018). The lodestar method asks courts to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of providing evidence of the hours expended in the litigation as well as the rates claimed. *Id.* "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Cerdit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

Here, Plaintiff seeks attorneys' fees in excess of what would be awarded pursuant to Rule 55-3. Specifically, Plaintiff seeks fees in the amount of $33,675.30 and costs of $1,471.10. (ECF No. 21-1 at 27). Plaintiff calculated the fees amount by multiplying the hourly rates of the two attorneys handling the matter by the number of hours each respectively spent working on it. (ECF No. 21-2 "Kellar Dec'l." ¶¶ 18–24). The hourly rates for the two attorneys are $485.00 and $875.00, with Plaintiff receiving an additional 10% discount. (*Id.* ¶ 20). Plaintiff's counsel represents that all together the attorneys spent a total of 56 hours working on this matter. (ECF No. 21-14).

The hourly rates here appear reasonable. Though Defendants' failure to appear or otherwise defend the action meant that the case did not progress to a stage in which particularly complex legal issues were presented, the two attorneys primarily responsible for the matter both have extensive experience in intellectual property litigation. (Kellar Dec'l. ¶ 21). Indeed, the rates of each attorney appear to represent the relative years of experience each possesses. *See* (*Id.*) (attorney with 40 years' experience bills at rate double that of attorney with 8 years' experience). Furthermore, these rates are comparable to rates previously approved in this District for attorneys with similar levels of experience. *See*

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (finding rates of $750 to 975 for partners was appropriate in the community); *see also Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *16 (C.D. Cal. Mar. 24, 2015) (approving rates of $825 to $930 for partners, $350 to $690 for associates, and $240 to $290 for staff in trademark infringement suit). The rates here therefore fall within the reasonable range in the community.

The number of hours spent on the case also appears reasonable. Reasonable hours are those that are not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (internal citation omitted). Plaintiff has included documentation of the hours expended by each of his attorneys, including details regarding each of the tasks completed. (Kellar Dec'l. Ex. L). Given these records, the Court finds that the number of hours spent on the case was reasonable. *See Garrapata, LLC v. Norok Innovation, Inc.*, No. CV 21-00356-CJC (PDx), 2022 WL 4099471, at *2–3 (C.D. Cal. Jun. 24, 2022) (finding 46.5 hours spent on trademark infringement default judgment reasonable); *see also ROAR, LLC v. ROAR Glob. Ltd.*, 2016 WL 7115902, at *8 (C.D. Cal. Dec. 5, 2016) (finding 130 hours spent to obtain default judgment reasonable). Therefore, the Court finds Plaintiff's request for $33,675.30 to be reasonable and awards the requested amount.

Plaintiff also requests an award of $1,471.10 in costs accrued in bringing this action. (ECF No. 21-1 at 27). Plaintiff has provided an itemized list explaining how the costs were incurred. (Kellar Dec'l. Ex L). Furthermore, under the Lanham Act, a plaintiff that prevails on its trademark infringement or counterfeiting claims is entitled to an award of costs. *See* 15 U.S.C. § 1117(a). Therefore, because the Court has reviewed the list of costs and finds it reasonable, it awards the requested amount.

## IV. CONCLUSION

In accordance with the foregoing, the Court GRANTS Plaintiff's motion for default judgment. The Court further directs Plaintiff to submit a proposed judgment in accordance with this Order within seven days.

IT IS SO ORDERED.

DATED: December 12, 2022

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE